UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAIGAN C. SMALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:24-cv-00313-NT |
| | ) | |
| DEPUTY ASHLEY SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Before me is Defendant Ashley Smith's motion to dismiss Plaintiff Daigan C. Small's amended complaint, which asserts claims under 42 U.S.C. § 1983 and Maine law. For the following reasons, the motion (ECF No. 25) is **GRANTED**.

**BACKGROUND**[1]

I included a detailed account of the factual background of this case in my previous order granting a motion to dismiss filed by different defendants. Order on Defs.' Mot. to Dismiss ("**Order**") 1–3 (ECF No. 17). Here, I offer only a brief rendition. On June 19, 2023, Small asked a construction manager in Bingham, Maine if Small could have the "Restaurant & Lounge" sign from a building that was being demolished, and the construction manager agreed. First Am. Federal Compl. with Jury Demand ("**FAC**") ¶ 6 (ECF No. 24). As Small drove away with the sign, Bingham's town manager, Steven Steward, tried but failed to run Small off the road

---

[1]    On a motion to dismiss, I "accept as true all well-pleaded allegations" in the Plaintiff's amended complaint "and draw all reasonable inferences in [the Plaintiff's] favor." *Thornton v. Ipsen Biopharms., Inc.*, 126 F.4th 76, 78 (1st Cir. 2025) (citation and internal quotation marks omitted).

in an effort to stop Small from taking the sign. FAC ¶¶ 8–12. After failing to physically apprehend Small, Steward tried a different approach. FAC ¶ 13. That same day, he amended the Town of Bingham's existing contract with a waste management company to explicitly give the town ownership rights over all materials from demolition projects. FAC ¶¶ 14–15, 17. Steward then contacted the Defendant, Deputy Ashley Smith of the Somerset County Sheriff's Office, and, citing that new contract provision, accused Small of theft. FAC ¶ 18. In response to the accusation, Smith interviewed Small and his fiancée at Small's home. FAC ¶ 19. Both voluntarily gave sworn statements, and Small's fiancée showed Smith a video of the construction manager "allowing" Small to remove the sign. FAC ¶ 19. Smith then seized the restaurant sign (which Steward later took custody of) and issued a criminal summons[2] charging Small with Maine misdemeanor theft.[3] FAC ¶¶ 20, 23, 55.

Several days later, after interviewing witnesses (and learning that the relevant contractual provision had not existed when Small took the sign), Smith "concluded her investigation by recommending the 'case be closed by arrest.' " FAC ¶¶ 24–26. But Small was never arrested or detained. Instead, the Somerset County District Attorneys' Office dismissed all charges against him. FAC ¶ 27.

---

[2]    Under Maine law, a criminal summons is not an arrest. *Compare* 17-A M.R.S. § 15-A(1) ("A law enforcement officer who has probable cause to believe a crime has been or is being committed by a person may issue . . . a written summons . . . directing that person to appear in the appropriate trial court to answer the allegation that the person has committed the crime.") *with id.* § 15(1) (listing offenses for which law enforcement "may arrest without a warrant").

[3]    "A person is guilty of theft if . . . [t]he person obtains or exercises unauthorized control over the property of another with intent to deprive the other person of the property." 17-A M.R.S. § 353(1)(A).

Over a year later, Small filed his original complaint against three defendants—Smith, Steward, and the Town of Bingham—alleging violations of the Fourth Amendment of the U.S. Constitution and various Maine laws. Federal Compl. with Jury Demand ("**Compl.**") (ECF No. 1). Smith answered the complaint, and Steward and Bingham moved to dismiss. *See* Answer and Affirmative Defenses of Def. Ashley Smith (ECF No. 11); Defs. Town of Bingham and Steven Steward's Mot. to Dismiss the Compl. (ECF No. 12). I granted Bingham and Steward's motion and dismissed all claims against them. Order 9.

Small then filed an amended complaint against only Smith. *See* FAC ¶ 5. Like the original, the amended complaint alleges Fourth Amendment claims under Section 1983 and violations of Maine law. FAC ¶¶ 28–63. Whereas the original complaint asserted that Small was detained and arrested, the amended complaint acknowledges that he was issued a summons but never arrested. *Compare* Compl. ¶ 2 (alleging that the Defendants caused "the improper detention and arrest of the Plaintiff") *with* FAC ¶ 2 (alleging that Smith engaged in "unreasonable and malicious conduct that involved the improper summonsing of Plaintiff").

Now before me is Smith's motion to dismiss the amended complaint. Def. Ashley Smith's Mot. to Dismiss for Failure to State a Claim ("**Mot.**") (ECF No. 25).

## LEGAL STANDARD

"The propriety of dismissal under [Federal Rule of Civil Procedure] 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2)," which "sets a relatively low bar for plaintiffs" but "is not a toothless pleading requirement." *Thornton v. Ipsen*

*Biopharms., Inc.*, 126 F.4th 76, 80 (1st Cir. 2025) (citations and internal quotation marks omitted). "To comply with Rule 8—and survive a Rule 12(b)(6) motion—a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In evaluating a complaint under these standards, I "first disregard all conclusory allegations that merely parrot the relevant legal standard" and then "consider whether the remaining allegations taken as true, state a plausible, not a merely conceivable, case for relief." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 102 (1st Cir. 2013) (citations and internal quotation marks omitted). Dismissal is warranted " '[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.' " *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).

## DISCUSSION

### I.    Fourth Amendment Claims Under Section 1983

The Plaintiff asserts his federal claims under 42 U.S.C. § 1983, which requires him to allege that the Defendant, "acting under color of state law, caused the deprivation of a federal right." *Burke v. Town of Walpole*, 405 F.3d 66, 76 (1st Cir. 2005); 42 U.S.C. § 1983. The Defendant argues that the Plaintiff fails to allege any federal violation and that, in any case, she is shielded from civil liability by qualified immunity. Mot. 2–3, 4–5.

The Plaintiff's Section 1983 claims involve alleged violations of his Fourth Amendment right "to be free from unreasonable seizure." *French v. Merrill*, 15 F.4th 116, 123–24 (1st Cir. 2021) (citing U.S. Const. amend. IV); *see* FAC ¶¶ 28–35, 58–63. He alleges three related theories. The first two are premised on alleged seizures of his person, while the third is premised on the alleged seizure of his property (the building sign). *See Est. of Bennett v. Wainwright*, 548 F.3d 155, 167 (1st Cir. 2008) ("The [Fourth] Amendment applies equally to seizures of persons and to seizures of property.") (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)).

## A.    Unlawful Seizure of the Plaintiff

The Plaintiff's first two theories assert that the Defendant violated the Fourth Amendment by unlawfully seizing the Plaintiff, either when she issued him a criminal summons or when she caused him to be prosecuted "without probable cause." FAC ¶¶ 29, 60. To state a Fourth Amendment violation under either theory, the Plaintiff must allege that he was "seized," which requires alleging that his liberty was "restrain[ed]" by the Defendant's exercise of "physical force or a show of authority." *Est. of Bennett*, 548 F.3d at 167.

The Plaintiff fails to identify any such conduct. It is well established that "service of a summons alone does not effect a seizure under the Fourth Amendment," *Doyle v. Rumsey*, No. 2:22-cv-00127-GZS, 2023 WL 2868315, at *2 (D. Me. Apr. 10, 2023) (citation omitted), and the Plaintiff does not identify any other restraint on his liberty such as an arrest, detention, or restricted travel. *Cf. Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999) (no seizure where the plaintiff "merely received a summons in the mail" and was not "depriv[ed] of his liberty before the charges against

him were dismissed"). The Plaintiff's argument is that a seizure occurred because the Defendant did not merely issue a summons but rather did so while also taking possession of the building sign, causing a "significant imposition on [his] Fourth Amendment rights." Pl's Opp'n to Def. Ashley Smith's Mot. to Dismiss for Failure to State a Claim ("**Opp'n**") 5 (ECF No. 28).[4] But the Plaintiff cites no support for the novel proposition that interference with one's *property* can somehow cause the seizure of one's *person*. A person is seized only when another's "intentional acquisition of physical control over the subject . . . causes a termination of his freedom of movement." *Britton*, 196 F.3d at 29–30 (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989) (emphasis omitted)). Because the Plaintiff does not claim that the Defendant's possession of the building sign impacted his freedom of movement, he has not alleged a seizure. His first two Fourth Amendment theories therefore fail.[5]

And because he does not allege a federal violation of unlawful seizure of his person, I need not reach the Defendant's qualified immunity defense in this context. *Cf. Saldivar v. Racine*, 818 F.3d 20 n.8 (1st Cir. 2016) (declining to assess qualified immunity where the Section 1983 claims were "not plausible as alleged").

---

[4]    *See also* Pl's Opp'n to Def. Ashley Smith's Mot. to Dismiss for Failure to State a Claim 7 (ECF No. 28) ("[T]his is not an instance of a subject being aggrieved by the 'mere receipt of a summons form'—rather, it is a case where the effect of a maliciously issued summons and complaint was compounded by the imposition of the law enforcement badge to deprive Plaintiff of his property.").

[5]    *Cf. Kurylo v. Rizzo*, No. 2:15-cv-15-NT, 2016 WL 5936863, at *5 n.9 (D. Me. Oct. 12, 2016) ("It is axiomatic that a § 1983 claim for false arrest requires an actual seizure or arrest. But the parties have not pointed to any evidence showing that Deputy Rizzo arrested or seized Kurylo after providing her with the summonses at the Brownfield substation.") (internal citation omitted).

## B.    Unlawful Seizure of the Building Sign

The Plaintiff's remaining theory is that the Defendant violated his "Fourth Amendment property rights" when she seized the building sign without probable cause. Opp'n 6; *see also* FAC ¶ 55 (alleging that the Defendant seized the sign "wrongfully," "[w]ithout legal justification," and "without a warrant, probable cause, or proper legal authority").[6] Public officials, however, have qualified immunity from liability unless (1) they violated a federal right, and (2) the unlawfulness of their conduct was "clearly established." *Punsky v. City of Portland*, 54 F.4th 62, 65–66 (1st Cir. 2022) (citation omitted). Because I may "consider[ ] the prongs in any order," *id.* at 66, I start with the "clearly established" prong of the qualified immunity analysis. The "clearly established" prong includes two related aspects. The first considers "the clarity of the law at the time of the alleged violation," while the second considers "the specific facts of the case at bar." *Id.* (citations and internal quotation marks omitted).

As to the first part, the law at the time of the alleged violation was fairly clear. "A 'seizure' of property occurs when a state agent meaningfully interferes with a private citizen's possessory interest in that property." *Est. of Bennett*, 548 F.3d at 167 (quoting *Tower v. Leslie-Brown*, 326 F.3d 290, 297 (1st Cir. 2003)). But a seizure "does not amount to a constitutional violation unless it is unreasonable." *Id.* A warrantless seizure of personal property generally is unreasonable unless justified by an

---

[6]    The First Circuit has held that the Fourth Amendment is implicated only when the government initially seizes personal property but not when it retains that property on an ongoing basis. *See Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017) (holding that a constitutional violation arising from the government's "retention" of property after its "lawful initial seizure" generally "sounds in the Fifth Amendment rather than in the Fourth"). Accordingly, I consider the Plaintiff's Fourth Amendment seizure-of-property claim only as it applies to the initial seizure of the building sign.

exception to the warrant requirement. *United States v. Sanchez*, 612 F.3d 1, 4 (1st Cir. 2010). One such exception is the plain-view doctrine, which makes a warrantless seizure lawful so long as the seizing officer (1) sees the object in "plain view" from a "lawful[ ] . . . vantage point"; (2) has "a right of access to the object itself"; and (3) has probable cause to believe the object is evidence of a crime. *Id.* at 4–5.

Generally, probable cause to seize an item in plain view exists when police have "reliable information that a crime has been committed" and "sufficient reason to believe that they have come across evidence of it." *Id.* at 5. "Qualified immunity, however, requires a somewhat lesser showing." *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004). In the context of warrantless seizures, qualified immunity will shield officers from suit so long as "the presence of probable cause [was] arguable or subject to legitimate question." *Id.* Importantly, the relevant inquiry is *not* whether probable cause existed to charge the Plaintiff with theft[7] but rather whether probable cause existed to seize the sign. *Cf. Sanchez*, 612 F.3d at 5 ("The second element of the [plain-view doctrine] test concerns whether probable cause existed for the seizure, not whether probable cause existed for the arrest.").

---

[7]     The allegations, viewed most favorably to the Plaintiff, could support the inference that the Defendant lacked probable cause to charge the Plaintiff with theft. Under Maine law, theft requires the actor to intend to take another's property without authorization. *See* 17-A M.R.S. § 353(1)(A) (requiring the person to "obtain[ ] or exercise[ ] unauthorized control over the property with intent to deprive the other person of the property"). But the Plaintiff alleges that he showed the officer a video of the construction manager "allowing" him to take the sign, FAC ¶ 19, which suggests that he believed he had permission to take possession of the sign and lacked the requisite intent to deprive another of the property without authorization.

I consider exactly what the Defendant knew when she seized the sign.[8] Before the Defendant had any contact with the Plaintiff, three Bingham residents informed her that the Plaintiff had removed a sign from a demolition site. FAC ¶ 18. Two, including Steward, had reported that the Plaintiff had "stolen" the sign, while the third merely said he had seen the Plaintiff "acquire the sign and leave the area." FAC ¶ 18. Two, excluding Steward, had personally witnessed the incident, while Steward "relied on secondhand information." FAC ¶ 18. Steward also told the Defendant that all demolition materials belonged to the Town of Bingham. FAC ¶ 18. The Defendant then interviewed the Plaintiff and his fiancée at their home, received their sworn statements, and saw a video of the construction manager "allowing" the Plaintiff to take the sign. FAC ¶ 19. Despite that evidence from the Plaintiff, and instead relying on Steward's assertion that Bingham owned all demolition materials, the Defendant seized the sign. FAC ¶¶ 20, 23.

Under the specific circumstances alleged, an officer in the Defendant's position could have reasonably relied on information from a local government official about the town's ownership of demolition materials and concluded that the construction manager lacked the authority to give the Plaintiff the sign. A reasonable officer could therefore have concluded that there was probable cause to believe that the sign was evidence of a crime, which would make it lawful—under the plain-view doctrine—to

---

[8]    *Cf. Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004) ("We now consider what Hainey knew and when he knew it. The point of our inquiry is to determine whether, at the time of the arrest, an objectively reasonable officer could have concluded that the salmagundi of facts added up to probable cause.").

seize the sign without a warrant. I emphasize that there is no allegation that the Defendant knew Steward had added the contractual provision about the town's ownership of demolition materials only after the Plaintiff had taken the sign.

And even if probable cause to seize the sign did not in fact exist, it was at least "arguable or subject to legitimate question," which entitles the Defendant to qualified immunity, the purpose of which is to "provide[ ] a safe harbor for a wide range of mistaken judgments." *Cox*, 391 F.3d at 29, 31 (citations and internal quotation marks omitted). Because I conclude that a reasonable officer in Defendant Smith's position could have concluded that an exception justified seizing the building sign without a warrant, the Plaintiff has failed to "satisfy both aspects of the second prong to demonstrate that the law was clearly established."[9] *See Punsky*, 54 F.4th at 66. Accordingly, the Defendant is entitled to qualified immunity.

The Plaintiff's Fourth Amendment claim arising from the seizure of the sign therefore fails based on the Defendant's qualified immunity defense.

## II.    State Law Claims

Having dismissed the Plaintiff's Section 1983 claims, I decline to exercise jurisdiction over the remaining state law claims because I find "there is no continuing federal interest." *Vázquez-Velázquez v. P.R. Highways & Transp. Auth.*, 73 F.4th 44, 52–53 (1st Cir. 2023); *see also* 28 U.S.C. § 1367(c)(3).

---

[9]    I "start (and finish)" my analysis with the second aspect: whether it would be clear to a reasonable officer in the Defendant's position that taking the building sign would violate the Fourth Amendment. *Punsky v. City of Portland*, 54 F.4th 62, 66 (1st Cir. 2022).

## CONCLUSION

For the reasons stated above, Defendant Smith's motion to dismiss (ECF No. 25) is **GRANTED**.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 10th day of October, 2025.